## Susan Gibson *versus* Thomas Crehore.

The *St.* 1816, *c.* 84, entitling a widow to one third part of the rents and profits of land of which she is dowable, until her dower shall be assigned, was not intended to give her a remedy against any person except the heirs of her husband. *Semble.*

When the purchaser of an equity of redemption takes an assignment of the mortgage, it shall or shall not operate as an extinguishment of the mortgage, according as his interest may be, and according to the real intent of the parties.

A gives his promissory note to B, with a mortgage of land as collateral security, his wife, the plaintiff, releasing her right of dower A dies insolvent, and after condition broken, his administrators sell the equity of redemption to the defendant, who gives them a bond obliging himself to pay the debt to B, and enters into immediate possession. He accordingly pays that debt, and takes from B an assignment of the mortgage; and then mortgages the land to C. After this he makes a declaration in the presence of two witnesses, that he holds for condition broken, in order to foreclose the mortgage to B, giving no express notice to the plaintiff, and he continues in possession thereafter for three years. *Held,* that the payment of the debt to B, and the assignment, did not operate as an extinguishment of the mortgage so as to let in the widow to her dower; and that if her right of dower in the equity of redemption was not barred by the three years' possession, her remedy was by a bill in chancery, and not by an action under *St.* 1816, *c.* 84, for a third part of the rents and profits.

THIS was an action of *assumpsit* brought to recover one third part of the rents and profits received by the defendant from certain real estate described in the plaintiff's writ. The case was submitted to the determination of the Court upon an agreed statement of facts.

476     On the 18th of November, 1814, Abraham Gibson, the

---

[2] See *Commonwealth* v. *Gay,* 5 Pick. 44 ; 1 Chitty's Crim. Law, (3d Amer ed ) 290, note.

husband of the plaintiff, being seised in fee simple of the estate in question conveyed the same to one Brooks by deed of mortgage, conditioned for the payment of a promissory note given by A. Gibson to Brooks for 15,000 dollars in one year (afterwards extended to two years) from date and interest. The plaintiff joined in this deed in relinquishment of her right of dower. On the 10th of July, 1816, A. Gibson died, and E. Farley and J. Gibson were appointed administrators on his estate. They afterwards represented it as insolvent, and thereupon a commission of insolvency issued ; and Brooks presented his note to the commissioners, who allowed it as a debt existing against the estate, and returned it in their report to the judge of probate. The administrators paid to the other creditors of the estate 90 per cent. on their demands ; but before any distribution was made, the amount of the note to Brooks was struck from the list of claims. On the 26th of November, 1817, the administrators, under a license from this Court, for the consideration of 4300 dollars, conveyed to the defendant all the interest which A Gibson had at the time of his decease in the estate in question ; and the defendant at the same time gave them a bond obliging himself to pay the debt due to Brooks. The defendant immediately gave notice to the tenants of this estate that he had purchased it, and required them thereafter to pay the rents to him, which they consented to do, and ever since have done. On the 8th of January, 1818, Brooks, in consideration of 16,540 dollars paid him by the defendant, executed a deed, purporting to assign to the defendant and his heirs the mortgaged premises ; and on the same day the defendant conveyed the same in mort gage to John Parker, with condition for the payment of 6000 dollars in eighteen months and interest, which was afterward, on the 6th of April, 1821, paid, and the mortgage discharged.

On the 13th of February, 1818, the debt mentioned in the condition of Brooks's mortgage being due and unpaid, (unless the facts stated operated as an extinguishment of it,) and the time limited for the payment being expired, the defendant, in presence of C. Haven and R. P. Tolman, two of the tenants, entered the mortgaged premises, and caused those persons to subscribe a memorandum, which was agreed to be

477

evidence in the case, stating that on the day last mentioned the defendant, in their presence, took peaceable possession, as he said, for the purpose of foreclosing the mortgage. Ever since this entry the defendant has been in quiet possession, and has received the rents from the tenants to whom the premises were leased by him. No memorandum of this entry and possession was made in the registry of deeds, nor was any notice given of the same, except that the defendant mentioned it to Farley and A. Cushing, with whom he happened to converse on the subject ; and no part of the debt was paid or tendered to Brooks or the defendant, or in any way satisfied, unless by operation of law upon the facts agreed.

The plaintiff did not, before the commencement of this suit, demand of Brooks, or of the defendant, to set off her dower in the premises, nor has it ever been set off to her; but she did, on the 21st of August, 1817, demand of the administrators and of the heirs of her deceased husband, to set off her dower in all the real estate of which he died seised and possessed.

If, upon these facts, the Court should be of opinion that the plaintiff could maintain the action, judgment was to be rendered for damages ; otherwise she was to become nonsuit.

*March 25th*    *Gorham* and *Cooke*, for the plaintiff. The assignment by Brooks, the mortgagee, to the defendant, who held the equity of redemption, was an extinguishment or merger of the mort gage, and lets in the widow to her dower. *Hitchcock* v. *Harrington*, 6 Johns. R. 290 ; *Collins* v. *Torrey*, 7 Johns. R. 278 ; *Coates* v. *Cheever*, 1 Cowen, 478, 479 ; *James* v. *Morey*, 2 Cowen, 246, 286, 291, 300, 320 ; Patch on Mortg. 183 ; *Snow* v. *Stevens*, 15 Mass. R. 278. If the defendant had made with Gibson himself a contract like that made with his administrators, engaging to pay him part of the purchase money and to extinguish the mortgage with the rest, the case would have been precisely similar to *Bolton* v. *Ballard*, 13 Mass. R. 227, and the widow would have been dowable. The administrators have virtually paid off the mortgage, and so the case is within *Hildreth* v. *Jones*, 13 Mass. R. 525. See also *Barker* v. *Parker*, 17 Mass. R. 564. It will be said, that the defendant entered for foreclosure, and

continued three years in peaceable possession, pursuant to *St.* 1785, *c.* 22, § 2. But his entry was not adverse. No one was ousted, for he united in himself the two characters of mortgager and mortgagee. Patch, 202, 205. He had entered under his deed from the administrators, and no notice was given to the plaintiff, who was the only person who could redeem, that he intended to hold for condition broken. *Pomeroy* v. *Winship*, 12 Mass. R. 517 ; *Scott* v. *M'Farland*, 13 Mass. R. 314 ; *Thayer* v. *Smith*, 17 Mass. R. 429. A woman is now held to be dowable of an equity of redemption, and if this case is thought to come within the case of *Popkin* v. *Bumstead*, 8 Mass. R. 491, which was before that point was decided, then the plaintiff asks for a proportion of the rents and profits as a joint owner with the defendant of the equity of redemption.

*Prescott* and *A. Cushing*, *contrà*, cited *Popkin* v. *Bumstead*, as above ; *Majory* v. *Putnam*, 4 Dane's Abr. 183 ; *Bird* v. *Gardner*, 10 Mass. R. 364 ; — and as to merger and extinguishment, *Gardner* v. *Astor*, 3 Johns. Ch. R. 55 ; *Starr* v. *Ellis*, 6 Johns. Ch. R. 395 ; *Lord Compton* v. *Oxenden*, 2 Ves. jun. 261 ; *Countess of Shrewsbury* v. *Earl of Shrewsbury*, 1 Ves. jun. 233 ; *Thomas* v. *Kemish*, 2 Vern. 348 ; *Jones* v. *Morgan*, 1 Bro. C. C. 217 ; *St. Paul* v. *Viscount Dudley and Ward*, 15 Ves. 173 ; *Forbes* v. *Moffatt*, 18 Ves. 390 ; *Wynn* v. *Williams*, 5 Ves. 130 ; Co. Lit. 338 *b* ; 15 Vin. Abr. 362, *Merger* (*A.* 2).

PARKER C. J. delivered the opinion of the Court. This action of *assumpsit* for rents and profits of estate in which the plaintiff is alleged to be dowable, is supposed to be authorized by *St.* 1816, *c.* 84, which provides, " that in all cases where any person has died, or shall die seised of any estate, leaving a widow, who is lawfully entitled to dower therein, such widow shall be, and hereby is entitled to have and receive one undivided net third part of the rents, incomes and profits of such estate, until the heir or heirs of such deceased person shall assign and set out to such widow her dower, according to law, or until the same shall be actually assigned and set out to her, under a judgment of court, or an order of a court of probate."

*July 1st.*

479

This is the whole of the statute. It prescribes no form of action, and is certainly not of very easy interpretation in regard to the intent of the legislature, as to the cases on which it is to operate.

There is reason to believe, that this new remedy was intended only to be applied against the heirs of the deceased, who might refuse or neglect to have the dower seasonably assigned.[1] For heirs only are mentioned in the statute, as those who are to assign and set out the dower; and it cannot be supposed, that in all cases where the right to dower might be denied, so great a departure from the common law was in tended, as to allow the title to be disputed and settled in an action of *assumpsit*. It is more probable, that as at common law, and by the preëxisting statute, in actions of dower no damage could be recovered, except from the time of a demand by the widow to have the dower assigned, the principal object was to give her a right in the rents, &c., from the time when her title to dower accrued, viz. the death of her husband, so that she might recover in the form of damages the amount thus due, without any demand, and that the rents and profits should be the rule of damages whenever she should be obliged to sue for her dower. So that it may be considered doubtful, whether an action of *assumpsit* was intended to be given by the statute, or whether any other change was contemplated, than fixing the rule of damages and superseding the necessity of a demand.

But waiving these considerations, which have not been much relied on in the argument, we will proceed to the inquiry, whether, upon the facts stated, the plaintiff is *lawfully* entitled to dower in the estate described in the writ; for if she is not, so that she could maintain her action at law or be entitled to have an assignment by a decree of the probate court, she of course cannot support this action.

In the year 1814 the premises were mortgaged by her husband A. Gibson to Brooks, to secure the sum of 15,000 dollars, and she in due form of law released her right to dower. In 1816, A. Gibson the mortgager died, not having

---

[1] See *Gibson* v. *Crehore,* 5 Pick. 146

paid the debt secured by the mortgage. There was a right in equity to redeem belonging to his estate, and this was sold under a license of court by his administrators, and the present defendant was the purchaser. On the 8th of January, 1818, Brooks, the mortgagee, executed his deed of assignment to the defendant, of the mortgaged premises, having received from him the amount of his debt and the interest, being 16,540 dollars ; and on the same 8th day of January, the defendant conveyed the premises in mortgage to Parker, to secure 6000 dollars and interest, payable in 18 months, and on the 6th of April, 1821, this debt was paid and the mortgage discharged.

It is contended by the plaintiff's counsel, that these transactions amount to a payment of the debt to Brooks, and an extinguishment of the mortgage ; so that the widow is entitled to dower, in the same manner as though no mortgage had ever been made. If this be so, the defendant would manifestly be a great sufferer, as he has paid the whole value of the estate, consisting of the debt to Brooks and the sum paid for the equity of redemption ; and the widow would gain an unjust advantage, the law presuming that she was paid a consideration for her dower to the extent of the sum secured by the mortgage deed.

It is therefore on technical ground only that she can expect to succeed in her present claim, and on this ground the cause has been argued ; viz. that Crehore, by the purchase of the equity, became virtually the mortgager, and then having satisfied the claim of the mortgagee, the mortgage is paid and discharged, without regard to the form which was chosen by the parties to give legal effect to the transaction ; that there is in truth no subsisting mortgage, the very object of it having been answered by the satisfaction of the debt. The course of the argument admits, that if the defendant is in legal contemplation now the assignee of an undischarged mortgage, the plaintiff has no claim in law, whatever she may have in equity, as being dowable of the right of redemption. And this may well be admitted, for surely the plaintiff, having relinquished her right of dower upon the mortgage, could not maintain her claim against the mortgagee or his assignee. The case of *Popkin* v. *Bumstead*, 8 Mass. R. 491, is stronger than the present

43*

to this point. There the assignee of the mortgager paid the debt to the mortgagee, and the latter entered a discharge of the mortgage upon the record, which is a mode prescribed by the statute for the discharge of a mortgage ; but the widow was held not entitled at law to her dower, because it would be to defeat the very purpose of the payment by the assignee, which was to give assurance to his own title.

Several cases have been cited, to show that widows are entitled to dower in the equity of redemption of mortgaged estates ; and without doubt they are against all but the mort-gagee and those claiming under him, and they may enforce their claims at law.[1] So also if the mortgage is discharged by the husband in his lifetime, or by his executors or administrators out of the proceeds of his estate, the right of the widow which had been suspended revives, and she may proceed to recover her dower, just as if there had been no mortgage. But against the mortgagee or his assignee her right is only in equity, and it is only by a bill in equity, and by paying her due proportion of the debt, that she can avail herself of her right ;[2] and without doubt the executors and administrators, if there be personal estate whereby the debt may be discharged, may be compelled to contribute their just proportion in order to liberate the estate for the heirs, or for the creditors, if it should be for their interest to have the estate redeemed, and to enable the widow to have her dower.

But it is insisted, that the assignment of the mortgage in this case is mere matter of form, and that the law will give it no other operation than as evidence of payment and discharge of the mortgage. No doubt it has this effect against the mortgagee himself; he has received his debt, and can have no further claim ; but the question seems to be, whether the interest of

---

[1] See Revised Stat. c. 60, § 2; *Sheafe* v. *O'Neil,* 9 Mass. R. (Rand's ed.) 13, n. (a) ; *Snow* v. *Stevens,* 15 Mass. R. (Rand's ed.) 280, n. (a) ; 2 Powell on Mortg. (Rand's ed ) 699, n. (1).

[2] See Revised Stat. c. 60, § 2; *Gibson* v. *Crehore,* 5 Pick. 146; *Carll* v. *Butman,* 7 Greenl. 102.

An assignment of dower is not necessary, to enable the widow to maintain a suit in equity for the redemption of the mortgage. *Gibson* v. *Crehore, ubi supra.*

the assignee can be preserved against the widow claiming her dower, she having once relinquished it ; and the authorities are very satisfactory upon this point.   When the purchaser of a right to redeem takes an assignment, this shall or shall not operate as an extinguishment of the mortgage, according as the interest of the party taking this assignment may be, and according to the real intent of the parties.[1]   Now the interest of the defendant is altogether in upholding the mortgage, and it must have been his intent so to do, or this form of transaction would not have been adopted.

Mergers are odious in equity, and shall not be allowed where the estates may well stand together.   Thus if lessee for years make the lessor his executor, the term is not drowned, because the lessor has the freehold in his own right and the term in *auter droit*.   Co. Lit. 338 *b ;* Vin. Abr. *Merger,* (*A.* 2) *pl.* 1.   Now the defendant purchased the right in equity of the administrators of the mortgager, and that right may well stand with the assignment to him by the mortgagee.

This doctrine of giving effect to the assignment, according to the interest of the assignee, is fully explained and decisively settled in the court of chancery in England and in New York, and it is a principle very suitable for application in the present case, because it promotes substantial justice, and deprives no one of any just privilege or advantage.   *St. Paul* v. *Viscount Dudley and Ward,* 15 Ves. 173 ; *Forbes* v. *Moffatt,* 18 Ves. 390 ; *James* v. *Morey,* 2 Cowen, 246.

In Co. Lit. 208 *a,* Butler's note 105, analogous principles are settled ; but the doctrine against dower is carried further.

---

See *Hunt* v. *Hunt,* 14 Pick. 374; *Gibson* v. *Crehore,* 5 Pick. 146; *Thompson* v. *Chandler,* 7 Greenl. 377; *James* v. *James,* 6 Johns. Ch. R. 417; *Gardner* v. *Astor,* 3 Johns. Ch. R. 55; 3 Powell on Mortg. (Rand's ed.) 1089 *a,* n. (1).

If after an equity of redemption has been sold on execution, the mortgagee convey all his interest in the land to the mortgager, it will operate as an assignment, and not as an extinguishment of the mortgage.   *Barker* v. *Parker* 4 Pick 505.

But if the mortgager be seised of the equity of redemption at the time of the conveyance to him by the mortgagee, the mortgage will be extinguished ibid. · *Wade* v. *Howard,* 6 Pick. 492.

If a term is raised by way of mortgage, and a purchaser takes to himself the term, the widow, if the marriage was after the mortgage, is not dowable even in equity, although the husband were always seised of the inheritance.

But it is thought that the fact of the defendant's having, at the time of his purchase of the right of redemption, entered into a bond or covenant to pay the debt to Brooks, puts him in a worse condition than he would otherwise be in, and deprives him of the power of assuming the character of an assignee of the mortgage. Why should this make a difference? The debt being secured by note, as well as mortgage, it was proper that the administrators should take care that in no event the estate should be called upon for payment of the debt. It was proper, therefore, that they should exact security to effect this object, but the legal character of the whole transaction is in no respect changed thereby.

Nor does the fact that the defendant, after taking the assignment from Brooks, conveyed the premises in mortgage to Parker, hinder him from claiming to hold as assignee of the mortgage. The deed to Parker would convey all the interest which the defendant had, whether as owner of the fee simple unconditional, or as assignee of the mortgage, but does not prevent him from insisting, as against the widow, to hold as assignee.

The supposed entry of the defendant on the 13th of February, 1818, a few weeks after the assignment from Brooks and conveyance to Parker, whether valid or not to foreclose the right of redemption, and so to bar the widow of dower, is at least strong evidence of the intention of the defendant to consider the original mortgage as subsisting; and this intention, as will appear by the authorities cited, is decisive of the right in the defendant so to consider his claim.

That the widow's right to be endowed by virtue of the equity of redemption remaining in her husband at the time of his mortgage to Brooks, still subsists, unless the entry above mentioned and possession under it for three years, amount to a foreclosure, cannot be denied. But this is not a right which can be enforced at law against the defendant, who represents the original mortgagee. It is only by a bill in chancery, under

which the equitable extent of her claim can be adjusted, and her due proportion of the rents and profits taken into the account, that her right can be enforced in a manner which will give her all that she is entitled to, without manifest injustice to the party against whom she claims.[1]

Gibson<br>v.<br>Crehore.

*Plaintiff nonsuit.*

---

[1] See *Gibson* v. *Crehore,* 5 Pick 146 ; *Carll* v. *Butman,* 7 Greenl. 102.